Louis Anthony MANNA, Appellant,

v.

UNITED STATES DEPARTMENT OF JUSTICE; United States Attorney— District of New Jersey, Appellees.

No. 93–5662.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 22, 1994.

Decided April 5, 1995.

Rehearing Denied June 6, 1995.*

---

* Joyner, Circuit Judge, was limited to voting for panel rehearing.

Louis Anthony Manna, Leavenworth, KS, pro se.

Michael Chertoff, U.S. Atty., Robert M. Hanna, Asst. U.S. Atty., Newark, NJ, for appellees.

Before: BECKER and HUTCHINSON, Circuit Judges, and JOYNER, District Judge.*

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

*Pro se* appellant, Louis Anthony Manna ("Manna"), appeals from a final judgment of the United States District Court for the District of New Jersey granting summary judgment in favor of appellees, the United States Department of Justice and the United States Attorney's Office—District of New Jersey (collectively "Government"). Manna, relying on the Freedom of Information Act ("FOIA"), 5 U.S.C.A. § 552 (West 1977 & Supp.1994), seeks disclosure of all government documents referring to him, apparently in an effort to prove both his "innocence" and government misconduct during the criminal prosecution that resulted in his incarceration. Although it turned over some documents, the Government asserted that others were exempt from disclosure under various FOIA exemptions. The district court agreed and, in two separate opinions, granted the Government summary judgment. *Manna v.*

---

* Hon. J. Curtis Joyner, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

*United States Dep't of Justice,* 815 F.Supp. 798 (D.N.J.1993); *Manna v. United States Dep't of Justice,* No. 92–1840 (D.N.J. August 25, 1993). Manna appeals the district court's decision with respect to those documents the Government claimed were exempted under sections 7(A), 7(C) and 7(D). 5 U.S.C.A. §§ 552(b)(7)(A), (C), (D). We affirm.

## I. *Factual and Procedural History*

Manna, presently confined in the United States Penitentiary at Leavenworth, Kansas, served for over eight years as "consigliere" under Vincent "Chin" Gigante in the powerful New Jersey faction of the "Genovese Crime Family" of "La Cosa Nostra" ("LCN"). The district court succinctly summarized the ruthless "business" activities the Genovese Crime Family routinely engages in, stating:

> In the Northern New Jersey—New York Metropolitan area, the Genovese LCN Family has historically been one of the most powerful of the American Mafia criminal organizations. Today, the New Jersey contingent of the Genovese Family, through an entrenched network of racketeering operations, preys upon the transportation, shipping and construction industries. The Genovese LCN Family uses violence, intimidation and obstruction to further its organized criminal activities.

*Manna,* 815 F.Supp. at 802.

In 1989, a jury found Manna guilty, among other things, of RICO[1] offenses involving predicate violations of the Hobbs Act (extortion) and Taft–Hartley Act (bribery), organized gambling and three separate murder predicates relating to the affairs of the Genovese Crime Family. The convictions for conspiracy to murder in aid of racketeering involved the planned murders of John and Gene Gotti, high-ranking members of the "Gambino Family," and the notorious murder of Irwin Schiff in August 1987. The district court sentenced Manna, then aged sixty, to eighty years imprisonment. We affirmed Manna's conviction without opinion in *United States v. Manna,* 919 F.2d 733 (3d Cir.1990)

(table), *cert. denied,* 499 U.S. 949, 111 S.Ct. 1418, 113 L.Ed.2d 471 (1991).

In May 1991, Manna filed a FOIA request generally seeking "all records in reference to [him]self" and specifically "all records in regards to any electronic surveillance, whether legal or illegal" in the Government's possession. Manna desired to prove not only "government misconduct and wrongdoing" during his criminal trial, but also his "innocence."

On or about October 25, 1991, the Executive Office for United States Attorneys ("EOUSA") (the Justice Department division charged with processing FOIA requests sent to United States Attorneys' offices) turned over certain records to Manna. EOUSA refused to turn over other documents, relying upon various FOIA exemptions. On March 25, 1992, the Office of Information and Privacy affirmed EOUSA's decision. EOUSA provided additional documents on June 10 and September 30, 1992, but again refused to turn over others, claiming each fell within a FOIA exemption. The records provided were mainly pre-trial and trial transcripts.

On May 1, 1992, after exhausting his administrative remedies, Manna filed suit in the district court seeking declaratory and injunctive relief to compel disclosure of all documents in the Government's possession referring to him. On October 2, 1992, the Government moved for summary judgment. In support of its motion the Government filed: (1) the declarations of Robert C. Stewart, an Assistant United States Attorney for the District of New Jersey and Chief of the Strike Force Division; (2) the declarations of Virginia L. Wright, a supervisory paralegal specialist with EOUSA; (3) the declarations of Evelyn F. Bock, a paralegal specialist employed by the United States Attorney's Office for the District of New Jersey; (4) the declaration of Robert M. Hanna, an Assistant United States Attorney for the District of New Jersey; (5) the declaration of Marcus Williams, an Attorney–Advisor in the Employment Law and Information Branch of the Office of General Counsel for the Federal

---

**1.** Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1961 *et seq.*

(West Supp.1994).

Bureau of Prisons; (6) the declaration and supplement thereto of Michael D. Turner, a Special Agent assigned to the Freedom of Information Management Division at the Federal Bureau of Investigation ("FBI") in Washington, D.C.; and (7) two other declarations under seal.[2] Manna also submitted his own declaration in opposition to the Government's summary judgment motion and in support of his cross-motion for the same.

The district court, in a March 4, 1993, published opinion and an August 25, 1993, letter opinion, granted the Government's motion for summary judgment. *Manna v. United States Dep't of Justice,* 815 F.Supp. 798 (D.N.J.1993); *Manna v. United States Dep't of Justice,* No. 92–1840 (D.N.J. August 25, 1993). With respect to Exemption 7(A) (interference with law enforcement proceedings) the district court concluded that the Government had "submitted sufficient evidence that these documents are instrumental to proceedings anticipated in the near future" and, thus, are exempt as they could reasonably be expected to interfere with law enforcement proceedings.[3] *Manna,* 815 F.Supp. at 808.

As to the documents relating to Exemption 7(C) (personal privacy) the district court determined that the privacy interest of the interviewees, informants, witnesses, victims and law enforcement personnel outweighed any public interest asserted by Manna. *Id.* at 809. The court, in fact, concluded that Manna never showed "any public interest" in the information, let alone a public interest

that would outweigh the demonstrated privacy interests. *Id.*

With regard to documents the Government claimed fell within Exemption 7(D) (confidential law enforcement sources) the district court determined that the Government had met its burden, reasoning that "sources were given numbers to protect their identities and were expressly assured that their identities and the information they provided would be held in confidence by the FBI."[4] *Manna,* No. 92–1840, slip op. at 17.

## II. *Jurisdiction and Standard of Review*

The district court had subject matter jurisdiction under FOIA, 5 U.S.C.A. § 552(a)(4)(B) and 28 U.S.C.A. § 1331 (West 1993). We have appellate jurisdiction under 28 U.S.C.A. § 1291 (West 1993).

▬ In reviewing a grant of summary judgment in proceedings seeking disclosure under FOIA, we must first determine whether the district court had an adequate factual basis for its determination. *McDonnell v. United States,* 4 F.3d 1227, 1242 (3d Cir. 1993); *Patterson v. FBI,* 893 F.2d 595, 600 (3d Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). To put the point differently, the appellate court

is to determine, from inspection of the agency affidavits submitted, whether the agency's explanation was full and specific enough to afford the FOIA requester a meaningful opportunity to contest, and the

---

**2.** On February 15, 1994, we granted the Government's motion to supplement the appendix with the two declarations filed under seal.

**3.** Without violating the sealing order, we think that the dissent fails fully to appreciate the specificity of parts of the two sealed declarations.

**4.** The district court also held that other documents were exempt from disclosure under (1) Exemption 7(F) (endangerment of life or physical safety of law enforcement personnel), 5 U.S.C.A. § 552(b)(7)(F); (2) Exemption 6 (personal privacy), 5 U.S.C.A. § 552(b)(6); (3) Exemption 3 (statutorily exempt records, *e.g.,* grand jury materials, Title III intercept materials and pen register materials), 5 U.S.C.A. § 552(b)(3); and (4) Exemption 5 (common law privileges, *e.g.,* attorney-client privilege, attorney work product and deliberative process privilege), 5 U.S.C.A.

§ 552(b)(5). *Manna,* 815 F.Supp. at 810–16; *Manna,* No. 92–1840, slip op. at 4–11, 18. The district court also held that the Government's search for records responsive to Manna's FOIA request was adequate. *Manna,* 815 F.Supp. at 816–17. Further, the district court determined that the Government's submissions provided a sufficiently detailed basis for summary judgment and therefore were the functional equivalent of a *Vaughn* index. *Id.* at 817–18. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Manna does not discuss these rulings in his brief on this appeal and accordingly any issues concerning them are waived. Rather, he focuses his arguments on Exemptions 7(A), (C) and (D), which we consider hereafter on their merits. With respect to Exemption 6, *see also infra* note 8.

district court an adequate foundation to review, the soundness of the withholding. *McDonnell,* 4 F.3d at 1242 (quoting *King v. Dep't of Justice,* 830 F.2d 210, 217–18 (D.C.Cir.1987)). If this Court concludes that the evidence presented a sufficient factual basis, we must then decide whether the district court's determinations were clearly erroneous. *Id.* Under the clearly erroneous standard, we " 'may reverse only if the findings are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence.' " *Id.* (quoting *Lame v. Dep't of Justice,* 767 F.2d 66, 70 (3d Cir.1985) (*"Lame II "*)). Of course, questions of law receive plenary review. *Id.*

### III. *FOIA*

#### A. *Overview*

■ Congress enacted FOIA "to facilitate public access to Government documents." *United States Dep't of State v. Ray,* 502 U.S. 164, 173–74, 112 S.Ct. 541, 547, 116 L.Ed.2d 526 (1991). Without question, FOIA "reflect[s] 'a general philosophy of full agency disclosure[,]' " *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989) (quoting *Dep't of Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976)), to " 'ensure an informed citizenry, vital to the functioning of a democratic society.' " *FBI v. Abramson,* 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978)). To this end, FOIA requires governmental agencies to make promptly available any records requested so long as the request " 'reasonably describes such records.' " *Landano v. United States Dep't of Justice,* 956 F.2d 422, 425 (3d Cir.) (quoting 5 U.S.C. § 552(a)(3)), *cert. denied,* —— U.S. ——, 113 S.Ct. 197, 121 L.Ed.2d 139 (1992), *vacated in part on other grounds,* —— U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).

There are, however, specific exemptions from disclosure set forth in FOIA itself. Indeed, "[d]espite these pronouncements of lib-

eral congressional purpose," the Supreme Court teaches us that "the statutory exemptions are intended to have meaningful reach and application" and should not "be construed in a nonfunctional way." *John Doe Agency,* 493 U.S. at 152, 157, 110 S.Ct. at 475, 477–78. The Supreme Court reasoned:

> "Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information," and therefore provided the "specific exemptions under which disclosure could be refused." Recognizing past abuses, Congress sought "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy."

*Id.* at 152, 110 S.Ct. at 475 (quoting *Abramson,* 456 U.S. at 621, 102 S.Ct. at 2059) (other quotation and citation omitted).

■ Because FOIA creates a presumption favoring disclosure, the agency has the burden of showing that a statutory exemption applies. *McDonnell,* 4 F.3d at 1241. "The agency may meet this burden by filing affidavits describing the material withheld and detailing why it fits within the claimed exemption." *Id.* (citing *King,* 830 F.2d at 210). In *McDonnell,* we emphasized the purposes served by the affidavits and stated:

> The significance of agency affidavits in a FOIA case cannot be underestimated. As, ordinarily, the agency alone possesses knowledge of the precise content of documents withheld, the FOIA requester and the court both must rely upon its representations for an understanding of the material sought to be protected.

*Id.* To facilitate review of the agency's actions, the government must submit detailed affidavits indicating why each withheld document falls within an exempt FOIA category and, if public disclosure of the information needed to reach the decision would frustrate the exemption, the government should submit sealed affidavits. *See, e.g., Patterson,* 893 F.2d at 599; *American Friends Serv. Comm. v. Dep't of Defense,* 831 F.2d 441, 444 (3d Cir.1987) ("[A]n agency is entitled to

summary judgment if its affidavits describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.") (internal quotations and citation omitted).

### B. *Exemption 7*

■ Exemption 7 generally applies to "records or information compiled for law enforcement purposes." 5 U.S.C.A. § 552(b)(7). In *John Doe Agency*, the Supreme Court interpreted this language broadly to mean that the agency does not have to compile the documents *initially* for law enforcement purposes, so long as they are compiled for that purpose at the time the request for them is made. *John Doe Agency*, 493 U.S. at 155, 110 S.Ct. at 476–77. Thus, even if the government initially compiles the records for non-law-enforcement purposes after a request is made, but later transfers the documents to a law enforcement agency seeking to use them for law enforcement purposes, the documents satisfy this threshold requirement. *See id.* at 159–60, 110 S.Ct. at 478–79 (Stevens, J. dissenting). After establishing the threshold requirement, the government must still show that the record or information withheld falls within one of the six enumerated subsections of Exemption 7. *See id.* at 156, 110 S.Ct. at 477.

### 1. *Exemption 7(A)*

■ The district court permitted the Government to withhold numerous records under Exemption 7(A). 5 U.S.C.A. § 552(b)(7)(A). This exemption authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) *could* be reasonably expected to interfere with enforcement proceedings." *Id.* (emphasis added).[5] To fit within Exemption 7(A), the government must show that (1) a law enforcement proceeding

is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm. *See Robbins Tire & Rubber*, 437 U.S. at 224, 98 S.Ct. at 2318; *Abramson*, 456 U.S. at 630, 102 S.Ct. at 2064 ("No other provision of FOIA could compensate for the potential disruption in the flow of information to law enforcement agencies by individuals who might be deterred from speaking because of the prospect of disclosure.").

■ Under this exemption, a court may also take into consideration the requestor's identity. *See Robbins Tire & Rubber*, 437 U.S. at 239–40, 98 S.Ct. at 2325–26; *Grasso v. IRS*, 785 F.2d 70, 76–77 (3d Cir.1986). In *Grasso*, we explained:

The usual rationale[s] given for [applying Exemption 7(A) ] is the danger of witness intimidation, the witness' desire to maintain confidentiality, and concern that premature disclosure would create a chilling effect on potential witnesses and dry up sources of information.

*Id.* at 76 (citing *J.P. Stevens & Co., Inc. v. Perry*, 710 F.2d 136, 143 (4th Cir.1983)).

■ Here, the district court concluded that the Government had "submitted sufficient evidence that these documents are instrumental to proceedings anticipated in the near future" and, thus, are exempt because they could reasonably be expected to interfere with law enforcement proceedings. *Manna*, 815 F.Supp. at 808. Manna complains, however, that he is only seeking records on himself concerning previous prosecutions. He further argues that, as he has been imprisoned since June 28, 1988, the statute of limitations has expired on crimes for which the government may think he was involved.

We reject Manna's arguments and see no basis to disturb the district court's sound decision. The district court correctly concluded that an exemption for materials relevant to these prosecutions relates not only to prosecutions against the person seeking the information, but also to prosecutions against

---

**5.** In 1986 Congress amended this exemption to relax significantly the standard for demonstrating interference with enforcement proceedings.

The statute used to read *"would* interfere with." *See Curran v. Dep't of Justice,* 813 F.2d 473, 474 n. 1 (1st Cir.1987).

anyone else. Moreover, the Stewart Declarations and the two sealed declarations provide ample support for the district court's finding that disclosure would interfere with prospective criminal and civil law enforcement proceedings involving the Genovese LCN Family and Manna. *See* Appellant's Appendix ("App.") at 145–172 ¶¶ 13–53; 292–308 ¶¶ 6–19; 353–354 ¶¶ 5–6. As noted by the district court:

> A declaration filed under seal by [the Government] states that the declarant has read Mr. Stewart's October 2, 1992 declaration concerning Exemption 7 Materials ... [and] believes that more legal proceedings are forthcoming and believes that the Exemption 7(A) Materials "could reasonably be expected to interfere with law enforcement proceedings described in the Stewart Declaration." (November 19, 1992 Sealed Declaration at ¶¶ 7–10). In fact on Monday, February 1, 1993, a substantial criminal trial commenced before Judge Barry against several alleged powerful members of the Genovese LCN Family. *See United States v. Lombardi*, et al., Cr. 92–171.

*Id.*[6]

We find equally persuasive the district court's concern for those persons who have assisted or will assist law enforcement personnel in upcoming legal proceedings. Specifically, it stated:

> The declarations explain that the LCN, specifically the Genevose LCN Family, has a long, sordid and bloody history of racketeer domination and exploitation. Plaintiff, although physically confined in a penitentiary, has not severed his ties to the Genovese Crime Family. Because the LCN is so violent and retaliatory, the names of interviewees, informants, witnesses, victims and law enforcement personnel must be protected. Everyone of the major LCN leadership level defectors in recent years has stated and/or testified that only slight suspicion is needed before deciding to kill a suspected informant. With very few exceptions, the mere accusation by a member in good standing is sufficient to precipitate the issuance of a death warrant from the hierarchy. Moreover, disclosure of FBI reports could result in a chilling effect upon potential cooperators and witnesses in organized crime enforcement investigations.

*Id.* In short, the Government's submissions adequately demonstrate that prospective criminal or civil (or both) proceedings are contemplated against Manna and other Genovese Crime Family members and, as a result, disclosure would harm these proceedings.

### 2. *Exemption 7(C)*

The district court also allowed the Government to withhold numerous records under Exemption 7(C). *See* 5 U.S.C.A. § 552(b)(7)(C). This exemption authorizes the withholding of records or information compiled for law enforcement purposes to the extent that production of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[7] *Id.* Exemption 7(C) also requires a balancing of the privacy interests at risk against the public interests, if any, that would be served by disclosure.[8] *Reporters*

---

6. In this respect, *see also supra* note 3.

7. This section formerly authorized withholding of such records if they "would constitute" a "clearly unwarranted" invasion of privacy. *See United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 & n. 9, 109 S.Ct. 1468, 1473 & n. 9, 103 L.Ed.2d 774 (1989).

8. In presenting his argument on Exemption 7(C) Manna refers briefly to Exemption 6, contending the two have similar underpinnings. Exemption 6 allows the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.A.

§ 552(b)(6). In the district court Manna did argue directly that Exemption 6 was inapplicable because a relocated witness may have died. *Manna*, No. 92–1840, slip op. at 7. In its supplemental opinion the district court rejected this argument. *Id.* at 8. It relied on the Government's showing that a search of its records produced no evidence of the relocated witness's death. *Id.* We believe Manna's mere mention of an analogy between Exemption 6 and Exemption 7(C) is insufficient to raise this issue on appeal. To the extent Manna has not waived Exemption 6 we believe the district court's finding that the relocated witness may be alive is not clearly erroneous on this record. *See also United States Dep't of State v. Washington Post Co.*, 456 U.S.

*Comm. for Freedom of the Press,* 489 U.S. at 762, 109 S.Ct. at 1476; *McDonnell,* 4 F.3d at 1254.

■ We have held that law enforcement officers, interviewees and witnesses involved in criminal investigations, not just suspects, have a "substantial privacy interest" in non-disclosure of their names "because disclosure may result in embarrassment and harassment." *McDonnell,* 4 F.3d at 1255 (citing *Landano,* 956 F.2d at 426). These same individuals have a privacy interest in "not having their names revealed in connection with disclosure of the fact and subject matter of the investigation." *Id.* at 1256 (citing *Landano,* 956 F.2d at 426–27). Passage of time alone is not enough to erase this privacy interest, although the interest may become diluted with the passage of time. *See id.*

■ Manna appears to seek disclosure of the documents in an effort to prove, in a forthcoming 28 U.S.C.A. § 2255 (West 1994) habeas petition, government misconduct during his criminal prosecution as well as his "innocence." He asserts that not only is his interest at stake, but also the public's interest in the administration of criminal justice and assuring that the innocent are not wrongfully convicted and confined. The alleged wrongdoing on the government's part includes illegal electronic surveillance, failure to turn over *Brady* material and deliberate alteration of words and the voices they are attributed to in intercepted conversations the government used at Manna's trial. Manna also asserts that the district court improperly took into account his identity when it applied Exemption 7(C).

The district court concluded that the Government met its burden of demonstrating that disclosure of certain information would harm the privacy interests of a variety of persons mentioned in the records (*e.g.,* persons interviewed by the FBI and mentioned in the interview reports, as well as FBI personnel mentioned in the records). *Manna,* 815 F.Supp. at 808–10. The district court concluded that Manna failed to assert "any public interest" in the information, let alone a public interest that would outweigh the demonstrated privacy interests. *Id.* at 809. The district court stated:

> Although the general rule is that neither the purpose for which the request is made nor the identity of the requester can determine whether documents should be disclosed, the facts in this case necessitate a departure from this general rule. I cannot overlook the fact that plaintiff has been sentenced to 80 years in prison for murder and his participation in organized crime as a leader within one of the most powerful organized LCN families in the nation. Indeed, the Third Circuit has recognized that a LCN Family counts on "its well founded reputation for achieving its objectives through violent means." Releasing the names of the people who assisted in the apprehension of organized crime participants would make the assistors unnecessarily vulnerable to possible harassment and retaliation.

*Id.* at 809–10 (internal citations omitted).

Again, we are in accord with the district court's findings. Although a court does not usually take a requester's identity into consideration, Manna's position in the hierarchy of a particularly influential and violent La Cosa Nostra family is highly material to the protection of individual privacy interests that Exemption 7(C) is meant to protect. Manna's complaints relating to government misconduct are unfounded. *See Ray,* 502 U.S. at 177–78, 112 S.Ct. at 549 (Exemption 6) ("Mere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy.") Absent proof of misconduct, which is needed to justify invading the demonstrable privacy interests involved here, we "need not linger over the balance" because "something ... outweighs nothing every time."[9] *National Ass'n of Retired Federal Employees v. Horner,* 879 F.2d 873, 879 (D.C.Cir.1989)

595, 599–602, 102 S.Ct. 1957, 1960, 72 L.Ed.2d 358 (1982).

**9.** Assuming that the failure to turn over alleged *Brady* documents involves some public interest, we are nevertheless satisfied that it is insufficient to outweigh the threatened privacy interests.

(Exemption 6), *cert. denied,* 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990).

### 3. *Exemption 7(D)*

The district court relied upon Exemption 7(D) in permitting the Government to exclude other documents. *See* 5 U.S.C.A. § 552(b)(7)(D). Exemption 7(D) authorizes the withholding of records or information compiled for law enforcement purposes to the extent that production of such records "could reasonably be expected to disclose the identity of a confidential source ... and in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ... information furnished by a confidential source." [10] *Id.*

The district court upheld the FBI's assertion of this exemption as to numerous FBI investigatory reports containing information from sources who were expressly assured confidentiality. *See Manna,* No. 92–1840, slip op. at 15–18. These documents and the relevant circumstances relating to Exemption 7(D) are described in the Supplemental Declaration of Michael D. Turner. *See* App. at 457.

Manna argues that the district court erred in applying the principles enunciated in *United States Dep't of Justice v. Landano,* —— U.S. ——, ——, 113 S.Ct. 2014, 2020, 124 L.Ed.2d 84 (1993). He argues it was error to assume that all sources were confidential merely because they had been assigned numbers and that the Government should have established that each source specifically furnished information with the understanding that the communication would not be divulged.

▆▆▆▆ If a district court determines that a source provided information under an express assurance of confidentiality or under circumstances from which an assurance of confidentiality can reasonably be inferred, then *all* information provided by the source is protected. *See Schmerler v. FBI,* 900 F.2d 333, 338 (D.C.Cir.1990). Although *Landano* casts doubt on the validity of the concept of

implicit confidentiality, *see Landano,* —— U.S. at —— ——, 113 S.Ct. at 2014–20, *express* assurances of confidentiality clearly meet the requirements of Exemption 7(D). *See id.* at —— ——, 113 S.Ct. at 2019–20. In this case the Government has shown, contrary to Manna's assertions, that law enforcement sources were given express assurances of confidentiality. *See* Supplemental Declaration of Michael D. Turner, App. at 465. Thus the information provided by them should be protected from disclosure.

### IV. *Conclusion*

We will affirm the grant of summary judgment in favor of the Government.

BECKER, Circuit Judge, *concurring in part and dissenting in part.*

Judge Hutchinson has written a fine opinion and I agree with his disposition of the government's claim under Exemption 7(D) (Confidential Sources). But while I acknowledge the issues are quite close, I respectfully disagree with the majority's decision concerning the government's other claimed exemptions from the FOIA statute.

### I. *Exemption 7(A). (Interference with Enforcement Proceedings)*

I acknowledge the importance of this exemption, but note that it applies only when release of the information "would produce the undesirable results specified," and, like the other FOIA exemptions, it is to be "narrowly construed." *FBI v. Abramson,* 456 U.S. 615, 630, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982). Manna submits that he requests only information pertaining to himself and that, having been confined for more than five years, the statute of limitations has expired as to him, and that this defeats the government's claim that disclosure would interfere with enforcement proceedings. As to the crimes for which prosecution is barred by the statute of limitations, it is hard to follow the government's argument, for the reasons

---

**10.** We recognize an overlap between Exemptions 7(A) and 7(D) but conclude that here they provide independent grounds for denial of Manna's FOIA claims.

set forth in the margin.[1] But even assuming that we can look beyond such matters, the agency must certainly aver with sufficient specificity that some criminal proceeding against someone is reasonably imminent.

More specifically, I think it is insufficient that the agency may at some unspecified future point in time bring an enforcement proceeding. As I see it, the agency must be actively conducting an ongoing investigation, or should have a present intent to bring an enforcement proceeding in the reasonably specified future. *See Mapother v. Department of Justice*, 3 F.3d 1533, 1540 (D.C.Cir. 1993) (holding that to invoke Exemption 7(A) the agency must show that their disclosure "(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or *reasonably anticipated*" (emphasis in original)). The government has not indicated that any such proceedings are in the works, but expects that they may be prosecuted "within the space of this decade." First Stewart Decl. ¶ 33 (A 159–60). I do not think that a span of ten years is sufficient to defect a requestor's otherwise valid claim.

Manna also argues that he is only seeking records pertaining to *his* prior conviction, which are subject to the statute of limitations. Of course, insofar as those records could be used against other defendants as to whom the statute of limitations does not provide a safe haven (because they have committed at least one predicate act within the last five years), the government is correct in asserting that they cannot be released under Exemption 7(A). First Stewart Decl. ¶ 13 (A 145). However, it is my view that the government must not only demonstrate (for each record) that its release would impede a prospective law enforcement proceeding that is viable, but also that it is impossible to redact the exempt information and release the other information. As I see it, the government might redact out that information in the documents which pertains to enforcement proceedings against other members of the Genovese LCN Family, but turn the rest over to Manna. I do not think the government has met that burden.[2]

1. The statute of limitations for two of the crimes the government relies on heavily, criminal RICO and obstruction of justice, both have a five-year statute of limitations. *See* 18 U.S.C. § 3282. The statute of limitations generally begins to run when the crime has been completed. *See Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). The leading case on the issue of completion of the crime, *United States v. Persico*, 832 F.2d 705, 713 (2d Cir.1987), *cert. denied* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988), held that "the crime of RICO conspiracy is not complete until the purposes of the conspiracy either have been accomplished or abandoned." As to civil RICO claims, the statute of limitations is four years. *See Agency Holding Corp. v. Malley–Duff & Assoc. Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). Since Manna has been imprisoned for over five years, the government cannot be contemplating a RICO or obstruction of justice claim against him unless with respect to the RICO claim the government can show that Manna has committed a predicate act while in prison. *Persico*, 832 F.2d at 714 (concluding that "in order to satisfy the statute of limitations for section 1962(c), the government must demonstrate that a defendant committed at least one predicate racketeering act within the limitations period"). Manna argues there is no evidence in the record to establish this fact even though the agency had access to his visitation records, his mail, and his recorded telephone conversations. Br. of Appellant at 22. The government, of course, has the burden of showing that a FOIA exemption applied. However, the government's submissions are conclusory, lacking in both time frames and any details as to either criminal involvement by Manna or contact by him with LCN associates.

2. I acknowledge that, with respect to this exemption, the identity of the requestor, *does* matter, *Grasso v. IRS*, 785 F.2d 70 (3d Cir.1986), but that is so only in limited respects. In dealing with this exception, the district court and the majority focus on the violence of the Genovese Crime Family. That fact would certainly be relevant under Exemption 7(F) (referring to information which "could reasonably by expected to endanger the life or physical safety of any individual"), 815 F.Supp. at 808, but it is hard to see its relevance to Exemption 7(A) except to the extent that the Family might harass, intimidate, or murder a potential victim in a reasonably anticipated proceeding. Similarly, the district court apparently was worried about a general "chilling effect upon potential cooperators and witnesses in organized crime enforcement investigations." 815 F.Supp. at 808. However, that concern is not a cognizable harm under Exemption 7(A); the exemption applies only to particular planned or pending law enforcement *proceedings*. As I stress *infra*, the district court and the majority arguably read Exemption 7(A) to swallow Exemption 7(D), and in effect to be broader than that exemption.

In sum, I do not believe that the government has made the required showing that the production of the requested law enforcement records or information could be reasonably expected to interfere with enforcement proceedings which in turn requires a showing that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978).

## II. *Exemption 7(C). (Unwarranted Invasion of Privacy)*

I acknowledge that law enforcement officers, interviewees, and witnesses involved in criminal investigations, not just suspects, have a substantial privacy interest in nondisclosure of their names, "because disclosure may result in embarrassment and harassment." *McDonnell*, 4 F.3d at 1255 (citing *Landano v. United States Dep't. of Justice*, 956 F.2d 422, 426 (3d Cir.1992), *vacated in part on other grounds*, 113 S.Ct. 2014 (1993)). The interest encompasses disclosure of their names in connection with the subject matter of the investigation. *See id.* at 1256. Passage of time alone is not enough to erase this privacy interest, although the interest does diminish over time. *See id.* Moreover, the fact that a convict would like access to the names to interview the witnesses and informants for a collateral attack on his or her conviction directly implicates the witnesses' and informants' privacy interests. *See Landano*, 956 F.2d at 427.

Manna, however, repeatedly asserts that all he is seeking is the records with the names redacted. This constitutes a far lower threat of invasion of privacy unless, of course, someone could from the context make out the speaker, in which case the identifying information should also be redacted. *See Landano*, 956 F.2d at 426 (noting that individuals have an interest in "not having their *names* revealed in connection with disclosure of the fact and subject matter of the investigation" (emphasis supplied)); *cf. Ray*, 502 U.S. at 173–75, 112 S.Ct. at 547–48 (upholding the agency's disclosure of the subject of refugee interviews with the interviewees' names redacted because while disclosure of the personal interview information would constitute only a *de minimis* invasion of privacy, release of the accompanying names would make the privacy invasion significant, especially since the interviewees could be subject to government retaliation in their home country). Thus, by not considering the possibility (which Manna requested) of redacting the names of the individuals to protect their privacy, the district court, in my view, improperly considered the privacy interest involved in the balancing exercise, and thus it needs to reconsider its conclusions using the proper analysis.[3]

---

**3.** I also question the district court's conclusion that Manna has asserted no public interest in release of the information. 815 F.Supp. at 809. Part of the reason Manna seeks the records is to discover whether the government withheld *Brady* material at his trial. We have stated that the "public at large has an important stake in ensuring that criminal justice is fairly administered; to the extent disclosure may remedy and deter *Brady* violations, society stands to gain." *Ferri v. Bell*, 645 F.2d 1213, 1218 (3d Cir.1981) (prisoner sought information to overturn a conviction) ("Although the motivation behind Ferri's request is ... personal, a FOIA request for material implicating the *Brady* rule simultaneously advances an 'indirect public purpose' satisfying the second prong of the test for disclosure under one of the privacy-based exemptions."), *modified*, 671 F.2d 769, 771 (3d Cir.1982) (per curiam) ("[T]he purpose of the remand is simply to determine whether a *Brady* claim exists that is sufficiently colorable so that the public interest in fair administration of justice warrants disclosure despite Exemption 7(c).")

As a rule, the public's interest in exposing government corruption and wrongdoing is the primary rationale for FOIA. *See e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.") Thus, I think that Manna may have a viable legal theory as to the facts. He avers that on December 21, 1986, "the New York Telephone Company removed a '189B Tek Com 88MH Load Com' from my telephone line." First Manna Decl. ¶ 8 (A 192); Second Manna Decl. ¶ 5 (A 334). The agency responds with evidence that on *January 20, 1987*, the district court ordered a pen register attached to Manna's lines. Sealed Hanna Decl. ¶ 6 (SA 3–4). Given the discrepancy in the dates, it seems to me the district court should not have concluded in the

The Exemption 7(C) issue also implicates the question of the identity of the requester. The government, conceding that the court may not consider the requester's identity, disputes Manna's characterization that the court did so here, and contends that

> a district court may consider all relevant facts in assessing the nature and extent of the invasion of privacy which result from disclosure. Such facts in this case include the ability and willingness of the violent, powerful and ongoing criminal institution, in which Mr. Manna held a leadership role, to harm or otherwise invade the privacy of, for example, persons it suspects of cooperation with law enforcement authorities.

Br. of Appellee at 22 n. 13. While I agree that this information is relevant under Exception 7(F), I disagree with the government that the threat of retaliation is a cognizable concern under Exemption 7(C). Retaliation has nothing to do with privacy, and, moreover, such a construction of Exemption 7(C) would eliminate the need for Exemption 7(F), violating the well known rule of statutory construction not to interpret language to render other language surplus verbiage. *See* Exemption 7(F) (referring to information which "could reasonably be expected to endanger the life or physical safety of any individual").

In any case, since the district court may have considered Manna's personal identity as the requester, rather than him as the subject matter of the request (which would equalize the analysis between all requesters), in its analysis, the district court should, in my view, reconsider the matter using the proper standard.

I would therefore affirm in part, reverse in part and remand for further proceedings.

agency's motion for summary judgment that no public interest was implicated by Manna's request.