Jonathan J. **WICHLACZ,** and Strategic Investment, L.L.C., Plaintiffs,

v.

**U.S. DEPARTMENT OF INTERIOR,** and **Federal Bureau of Investigation,** Defendants.

**Civil Action No. 96–143–A.**

United States District Court, E.D. Virginia, Alexandria Division.

July 31, 1996.

Michael E. Geltner, Geltner & Associates, Washington, DC, for plaintiffs.

Marc R. Hillson, United States Attorney's Office, Alexandria, VA, for defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

The plaintiffs, Jonathan J. Wichlacz ("Wichlacz") and Strategic Investment, L.L.C. ("SI"), seek an order for injunctive relief against the defendants, the United States Department of Interior ("DOI") and the Federal Bureau of Investigation ("FBI"), to enjoin them from withholding information sought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended. This action is before the Court on the Motion of the defendants to Dismiss or, in the alternative, for Summary Judgment.

## STATEMENT OF FACTS

SI is a newsletter that reports on contemporary political topics. On November 1, 1995, Wichlacz, a paralegal for SI, filed a FOIA request with the National Park Service ("NPS"), a department of the DOI, and the FBI. Wichlacz sought information relating to the July 20, 1993 death of Vincent Foster ("Foster"), former deputy counsel to the White House. Specifically, Wichlacz sought: (1) July 16, 1993 telephone records reflecting that Foster made two phone calls, both to a psychiatrist recommended by his sister, from his office and charged them to his home phone; (2) a list of psychiatrists found on a piece of paper in Foster's wallet after his death; and (3) any other documents reflecting the names, addresses, or telephone numbers of those psychiatrists. Wichlacz asserts that the purpose for requesting this information is to secure support for his theo-

ries that the agencies involved are covering up the fact that Foster's death was not, in fact, a suicide; and that the psychiatrists' names were planted in Foster's wallet to create the appearance that he was suffering from depression, which ultimately lead him to commit suicide.

On November 21, 1995, the DOI responded on behalf of the NPS with two pages of partially redacted information. DOI, however, withheld portions of the information sought because the information "could reasonably be expected to constitute an unwarranted invasion of the personal privacy of law enforcement personnel and other third parties." 5 U.S.C. § 552(b)(7)(C).

In particular, DOI advised Wichlacz that it was withholding: (1) three pages of handwritten notes made by law enforcement personnel, the contents of which were reflected in a typewritten record, which was released to Wichlacz in redacted form; (2) the names and badge numbers of the investigating officers; (3) the names of the three psychiatrists listed on the paper in Foster's wallet; and (4) the identity of another individual who was not the subject of Wichlacz's request, but whose name appeared on one of the withheld documents. DOI further responded that it had no telephone records responsive to Wichlacz's request.

The NPS completed its investigation of Foster's death on August 10, 1993 and officially ruled that the incident was a suicide. On January 20, 1994, Robert B. Fiske was appointed by Attorney General Janet Reno as the Regulatory Independent Counsel in the matter of Madison Guaranty Savings and Loan Association, pursuant to 28 C.F.R. Pt. 600; § 603.1. In that capacity, Fiske launched an independent investigation into the circumstances surrounding Foster's death. The NPS forwarded to the Office of Independent Counsel ("OIC") its investigatory file, including the information sought by Wichlacz.

On August 5, 1994, Kenneth W. Starr was appointed by the United States Court of Appeals for the District of Columbia Circuit, Division for the Purposes of Appointing Independent Counsels, as the statutory Independent Counsel to investigate the Madison Guaranty matter and the Foster death, pursuant to the Ethics in Government Act of 1978, 28 U.S.C. §§ 591–599, as reauthorized by the Independent Counsel Reauthorization Act of 1994, Pub.L. No. 103–270, 108 Stat. 732. After preliminary investigations, the OIC concurred with the judgment made by the NPS not to produce the information at issue. In seeking to avoid disclosure, the OIC invoked two exemptions to FOIA, § 552(b)(7)(A), relating to ongoing enforcement proceedings, and § 552(b)(7)(C), relating to the privacy interests of third parties.

On November 29, 1995, the FBI responded separately to Wichlacz's request advising that it was processing a backlog of requests which could result in a two-year delay in responding to his request. However, after Wichlacz filed the Complaint in this action, the FBI investigated his request on an expedited basis and determined that it did not have any of the requested documents. *See* Kelso aff. ¶¶ 5, 9, 10.[1]

On February 5, 1996, Wichlacz filed this action pursuant to 5 U.S.C. § 552 to enjoin the defendants from withholding the names of the psychiatrists, their addresses and telephone numbers, and the three pages of handwritten notes of enforcement personnel.[2] On May 6, 1996, the defendants filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6), or in the alternative, for Summary Judgment under Fed.R.Civ.P. 56. The Court has examined all of the relevant documents *in camera.*

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judg-

---

**1.** Because the FBI has no documents responsive to Wichlacz's request, the claim against the FBI is mooted and will be dismissed as moot.

**2.** Wichlacz does not seek the names of the law enforcement personnel involved in the Foster investigation. In addition, because it appears that there are no telephone records, Wichlacz evidently no longer seeks their production.

ment as a matter of law." Fed.R.Civ.P. 56; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*FOIA Generally*

▇▇▇ Congress enacted FOIA to facilitate public access to government documents. The statute reflects a general philosophy of full agency disclosure in order to ensure an informed citizenry, which is vital to the functioning of a democratic society. *See John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989); *FBI v. Abramson,* 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982). "People are permitted to know what their government is up to." *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). To this end, FOIA requires governmental agencies promptly to make available any records requested so long as the request reasonably describes such records and is not encompassed in one of the exemptions to FOIA.

▇▇▇ The FOIA exemptions reflect a desire to reach a balance between the right of the public to know what its government is up to and the need of the government to keep information in confidence. *See John Doe,* 493 U.S. at 152, 110 S.Ct. at 475. Generally, FOIA exemptions are narrowly construed in favor of disclosure. *See J.P. Stevens Co. v. Perry,* 710 F.2d 136, 139 (4th Cir.1983). However, the FOIA exemptions themselves recognize that public disclosure is not always in the public interest.

▇▇▇ The agency, of course, bears the burden of demonstrating that requested information falls within a FOIA exemption. *See Spannaus v. U.S. Department of Justice,* 813 F.2d 1285, 1288 (4th Cir.1987). The agency may meet this burden by filing affidavits describing the material withheld and detailing why it fits into a claimed exemption. *McDonnell v. United States,* 4 F.3d 1227, 1241 (3d Cir.1993). The district court must make a determination of whether government records were properly withheld under one of the FOIA exemptions listed in 5 U.S.C. § 552(b).

The provision at issue in this action, § 552(b)(7), exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, ... [and] (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy ...

*Records Compiled for Law Enforcement Purposes*

▇▇▇ The threshold question is whether the information sought was compiled for law enforcement purposes. In order for the records to have been so compiled, the investigative activities giving rise to the compilation of the records must be related to the enforcement of federal law, and there must be a rational connection between the investigative activities and the agency's law enforcement duties. *Western Journalism Center, et al. v. Office of the Independent Counsel,* 926 F.Supp. 189, 191 (D.D.C.1996).

Because Foster's body was discovered in Fort Marcy Park, a national park, the United States Park Police ("Park Police"), a unit of NPS, conducted the initial investigation into Foster's death. The information sought by Wichlacz was gathered and compiled by the Park Police pursuant to the NPS investigation. The Park Police determined that none of the three psychiatrists had ever talked with Foster and were unable to locate any telephone records reflecting calls made to them by Foster from the White House. *See* Carlstrom aff. ¶ 7. The NPS concluded its investigation and subsequently turned over its records to the OIC.[3] The OIC then commenced an independent federal criminal investigation into the matter of Madison Guaranty Savings and Loan Association and the circumstances surrounding Foster's death,

---

3. The NPS retained copies of the information it forwarded to the OIC.

which "remains active and ongoing." *See* Kubiatowski aff. ¶ 9, 11; Carlstrom aff. ¶ 9.

Clearly the government has established that the documents sought by Wichlacz were compiled for federal law enforcement purposes—first for the NPS, and currently for the OIC—in satisfaction of the threshold determination of § 552(b)(7).

*Interference with Enforcement Proceedings*

■■■■ Of course, the conclusion that the documents were compiled for law enforcement purposes does not preclude disclosure. In order to qualify for the exemption in § 552(b)(7)(A), the agency must show that disclosure of those documents could reasonably be expected to interfere with law enforcement proceedings. To satisfy that requirement, the government must demonstrate that: (1) law enforcement proceedings are pending or prospective; and (2) release of the information could reasonably be expected to cause some articulable harm. *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978); *Manna v. U.S. Department of Justice,* 51 F.3d 1158, 1164 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 477, 133 L.Ed.2d 405 (1995). In 1986, Congress amended this exemption to relax significantly the standard for demonstrating interference with enforcement proceedings. The statute previously required proof that release "would interfere with," rather than "could reasonably be expected to interfere with," law enforcement proceedings. *See Manna,* 51 F.3d at 1164 n. 5.

■■■■ If the agency seeking to avoid disclosure "fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position." *Spannaus,* 813 F.2d at 1289 (quoting *Barney v. Internal Revenue Service,* 618 F.2d 1268, 1272 (8th Cir.1980)). A particularized showing of interference is not required; rather, the government may justify nondisclosure in a generic fashion. *Id.* at 1288.87034800 A showing by the government that disclosure could lead to: (1) destruction or alteration of evidence, (2) intimidation or harm of knowledgeable individuals, and (3) fabrication of testimony, is sufficient to exempt documents from disclosure under § 552(b)(7)(A). *Id.* at 1289.

In this action, the OIC determined that production of the requested documents could reasonably be expected to interfere with its ongoing investigation of Foster's death. In particular, the OIC asserts that public disclosure could lead to: (1) intimidation or harassment of the witnesses listed on the paper found in Foster's wallet, thereby chilling their willingness to cooperate with the OIC, (2) reduced cooperation by other potential witnesses after learning of the disclosure of the names of other witnesses, and (3) alteration, tailoring, or construction of testimony by witnesses out of fear of intimidation or harassment. *See* Kubiatowski aff. ¶ 13.

The OIC claims that it produced "all reasonably segregable portions" of the sought-after documents, and withheld only what was necessary to protect the integrity of the enforcement proceedings. Wichlacz argues that this information cannot reasonably be expected to interfere with enforcement proceedings because there are no such proceedings pending or imminent given that the official version of Foster's death is that it was a suicide and there can be no enforcement proceeding respecting a suicide.

However, the topic of Foster's death is within the charter given Independent Counsel Starr, and OIC's affidavits establish that the topic is actively under investigation. *See* Kubiatowski aff. ¶ 11; Carlstrom aff. ¶ 9. Considering the notoriety attached to Foster's death and the related issues involving the Whitewater investigation, and taking into account the stakes at issue in the OIC's investigation, the OIC is justified in concluding that there are substantial risks of witness intimidation or harassment, of reduced witness cooperation, and possibly of the alteration or tailoring of testimony. This conclusion is supported by the facts that one key figure is dead; several others have been convicted of serious felony offenses; and numerous others are under investigation. Any person identified as having any information or involvement in the subjects of the investi-

gation, even the peripheral and minimal involvement present here, is exposed to: (1) constant pressure from the media; (2) questioning by lawyers for potential and actual defendants; (3) the pressure to sell testimony for profit, as well as the attendant temptation to make the story more marketable by enhancement or even by fabrication; and (4) conditions which make them unwilling to give evidence at all. All of these risks are not, as Wichlacz suggests, unlikely eventualities. To the contrary, events surrounding participants in recently concluded high-profile investigations and trials have shown these risks to be matters as to which there is ground for legitimate concern. Hence, the Court finds that OIC's conclusions respecting the potential effect of release on its investigation are fully warranted.

█ In any event, even if Wichlacz were correct that the NPS conclusion that the death was a suicide means that no "enforcement proceeding, i.e., a homicide trial," is imminent, his position is not improved because the information gathered by a government agency need not necessarily lead to a criminal prosecution to be entitled to protection. *See Arenberg v. Drug Enforcement Admin.*, 849 F.2d 579, 581 (11th Cir.1988). The law enforcement proceeding must merely be pending or prospective. *Cudzich v. U.S. INS*, 886 F.Supp. 101, 106 (D.D.C.1995). Moreover, the OIC has determined that the information requested is part of an ongoing investigation not only into the Foster death, but also into the Madison Guaranty matter and that premature disclosure could reasonably be expected to interfere with those investigations in several specific ways. *See* Kubiatowski aff. ¶ 13. One court recently has agreed that the active investigation into the circumstances surrounding Foster's death "is part of an ongoing investigation and that premature disclosure could reasonably be expected to interfere with [that] investigation." *Western Journalism*, 926 F.Supp. at 192.

█ As the record held in *Western Journalism*, "FOIA requests for access to an Independent Counsel's records will only be granted under extremely compelling circumstances." *Id.* Wichlacz has failed to offer

compelling reasons for disclosure of the documents which override the government's interest in protecting the enforcement proceedings and the information the investigations have produced. Wichlacz alleges what amounts to a government conspiracy to disguise Foster's murder as a suicide and desires the information in order to prove that theory. However, he has offered nothing whatsoever to support such a claim and without more than a bald allegation, the defendants' interest in protecting the integrity of an ongoing criminal investigation, as outlined by affidavit, outweighs Wichlacz's right to the materials sought.

Accordingly, the exemption provided by 5 U.S.C. § 552(b)(7)(A) is applicable and the disclosure of the information at issue is not compelled.

*Invasion of Privacy*

█ The government has relied on 5 U.S.C. § 552(b)(7)(C) as an alternative exemption which shields the requested information from compelled disclosure. Ordinarily, it is preferable not to decide issues on alternate grounds. *Karsten v. Kaiser Found. Health Plan*, 36 F.3d 8, 11 (4th Cir.1994). However, considering the facts of this case, the certainty of appeal, the need for closure on the issues presented, and the interests of judicial efficiency, this case is one in which it is appropriate to consider the alternate ground on which the government relies.

In order to qualify for the exemption provided by § 552(b)(7)(C), (1) the information sought must have been compiled for law enforcement purposes; and (2) it must be clear that disclosure of that information could reasonably be expected to constitute an unwarranted invasion of personal privacy. As explained above, the first factor is satisfied.

█ Consideration of the second factor pursuant to Exemption 7(C) requires the Court to balance the privacy interests at risk against the public interests that would be served by disclosure. Because the basic purpose of FOIA is to "open agency action to the light of public scrutiny," the only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would shed light on an agency's performance

of its statutory duties or otherwise let citizens know what their government is up to. *United States Department of Justice v. Reporters Committee for Freedom of the Press, et al.,* 489 U.S. 749, 773–74, 109 S.Ct. 1468, 1481–82, 103 L.Ed.2d 774 (1989). However, the FOIA-based public interest in disclosure is at its nadir when third parties seek law enforcement records concerning private citizens and those records would shed no light on the activities of government agencies or officials. *U.S. Department of Defense v. Federal Labor Relations Authority,* 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994). Law enforcement officers, interviewees, suspects, witnesses, and other individuals named in investigatory files all have substantial privacy interests in not having their names revealed in connection with the subject matter of a law enforcement investigation because such revelation could result in embarrassment or harassment. *See e.g., Manna,* 51 F.3d at 1166; *McDonnell,* 4 F.3d at 1255.

In this action, the NPS determined that the psychiatrists and the individual named in the withheld documents had a privacy interest in the nondisclosure of their names in connection with the investigation into Foster's death. In addition, the NPS concluded that the investigating officers had a privacy interest in not being identified, by name or badge number, in connection with the investigation of Foster's death. Likewise, NPS withheld the handwritten investigation notes of the law enforcement personnel because the officers had a privacy interest in not being identified by way of a handwriting sample released to the public. *See* Carlstrom aff. ¶ 8. The OIC likewise has asserted the privacy exemption. Kubiatowski aff. ¶ 6.

Given the notoriety of this case, including two sets of congressional hearings, countless newspaper and magazine articles, and numerous FOIA lawsuits, it is not unreasonable to conclude, as the government asserts, that release of the identity of these individuals would subject them to intense media scrutiny and, inevitably, to the type of privacy invasion envisioned by exemption 7(C). Wichlacz makes two arguments to the contrary.

First, Wichlacz contends that, because the psychiatrists are on referral lists, holding themselves out for public patients, they have no privacy interests in protecting their anonymity. In addition, because the psychiatrists are not suspects in the investigation, Wichlacz urges there would be no stigma attached to their being listed in the law enforcement records. When balanced against the public interest of ascertaining whether law enforcement agencies have assisted in covering up the true nature of Foster's death, Wichlacz suggests that the negligible privacy interests of these individuals must yield.

 This argument ignores the fundamental principle enunciated by the Supreme Court that:

> as a categorical matter ... a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no "official information" about a Government agency, but merely records what the Government happens to be storing, the invasion of privacy is "unwarranted."

*Reporters Committee,* 489 U.S. at 780, 109 S.Ct. at 1485. Although Wichlacz claims that he is seeking the information to shed light on the cover-up activities of the NPS, FBI, and OIC, he has set forth no evidence to buttress his bald allegations. Moreover, the fact that Foster's death is the subject matter of an ongoing OIC investigation substantially undercuts the cover-up theory on which Wichlacz predicates his assertion of public interest. Disclosure in this circumstance is not compelled because:

> [a]bsent proof of misconduct, which is needed to justify invading the demonstrable privacy interests involved here, we "need not linger over the balance" because "something ... outweighs nothing every time."

*Manna,* 51 F.3d at 1166 (quoting *National Ass'n of Retired Federal Employees v. Horner,* 879 F.2d 873, 879 (D.C.Cir.1989), *cert. denied,* 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990)).

This is especially true where, as here, the privacy interests are so compelling. None of the psychiatrists listed in the paper found in Foster's wallet had treated Foster, or had even known him. Because they were all three listed with the Georgetown Medical Directory Referrals, it is entirely possible that Foster got their names by using the referral service. Because none of the doctors knew or treated Foster, their interest in avoiding the inevitable public scrutiny, both of their professional and personal lives, outweighs Wichlacz's interest in tangential aspects of the Foster investigation.

Likewise, the other individual whose name and several phone numbers were written on the paper found in Foster's wallet appears to be connected to this matter only by virtue of having been included on the same piece of paper as the psychiatrists. That individual, too, has an interest in not being linked to, and harassed in connection with, the Foster investigation.

Although Wichlacz does not seek the identity of the investigating officers, he does seek their handwritten investigatory notes. The NPS has averred that this will permit identification of those officers through handwriting analysis. Wichlacz does not controvert this assertion. Recently, the Ninth Circuit has held that release of a writing sample may reasonably be expected to invade the personal privacy of law enforcement officers. *Church of Scientology v. IRS*, 995 F.2d 916, 920–21 (9th Cir.1993) (even when agent consented to disclosure of handwritten report, court must still conduct a balancing of the privacy interests of the agent against the public interest in disclosure). This Court must balance the privacy interest of the officers in not being identified in connection with the Foster investigation against the public interest in disclosure. Considering that the contents of the report evidently are reflected in the typewritten record released to Wichlacz in redacted form, the public already is in possession of the information sought and Wichlacz's interest in obtaining the handwritten version of the report is outweighed by the privacy interest of the officers.

Second, Wichlacz argues that there is no real risk that the privacy of those individuals will be invaded. Unfortunately, however, that simply is an unrealistic assessment of the risk. As explained above, the matter of Foster's death and the related OIC investigation are the subject of congressional hearings, lawsuits, and, consequently, intense media interest. It is no understatement to say that this media scrutiny presents a concomitantly great risk of the invasion of the privacy interests of any person identified, even in a remote way, with the investigation of Foster's death and the related Madison Guaranty matters.

It is not unreasonable to expect that disclosure of the identities of the psychiatrists, the law enforcement officers, and the other individual would subject them to an onslaught of media attention, even though those persons have nothing of substance to provide. Indeed, it is foreseeable that reporters and camera crews would besiege their places of work and their homes and would follow them, pressing microphones in their faces as they walk the public streets and as they attempt to go about their daily lives. It certainly is not out of the question that these people, and their families, would be subject to investigation into their own lives by the media. The law requires the balance outlined above to protect these people from such an invasion of privacy. Where, as here, the information known is so minimal and remote and the purported reason for securing their identity is so frail, the balance must be struck on the side of privacy.

For the foregoing reasons, FOIA exemption § 552(b)(7)(C) is applicable and the information sought by Wichlacz is properly withheld on that basis.

## CONCLUSION

Because the FBI has indicated that it does not possess any of what Wichlacz seeks, the claim against it is dismissed as moot. The DOI has established its right to withhold the sought-after documents under FOIA exemptions 5 U.S.C. § 522(b)(7)(A) and (C), and accordingly, DOI is entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.