**Rafic A. AMRO, M.D., Plaintiff,**

v.

**UNITED STATES CUSTOMS SERVICE, et al., Defendants.**

**No. CIV. A. 99–3786.**

United States District Court, E.D. Pennsylvania.

Jan. 30, 2001.

Rafic A. Amro, M.D., Allentown, PA, pro se.

Nicholas Gilman, Law Offices of Thomas D. Hunt, Philadelphia, PA, Richard W. Kolosky, Richard W. Kolosky, P.C., Bethlehem, PA, for Rafic A. Amro, M.D.

Nadine M. Overton, James G. Sheehan, U.S. Attorney's Office, Philadelphia, PA, for U.S. Customs Service.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is an action to compel two government agencies to produce documents in their possession under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.

Plaintiff Rafic A. Amro, M.D. has submitted several requests to the United States Customs Agency ("Customs") and the Drug Enforcement Administration ("DEA") for production of documents in their possession. Customs and the DEA have responded to Dr. Amro's requests in part but have redacted or withheld the balance of the documents responsive to his requests on the basis of certain exemptions from disclosure they claim are available under the statutes.

Dr. Amro now seeks to compel production of the documents redacted or withheld by the agencies. Before the court are cross-motions for summary judgment.

The court finds that the Customs' documents were validly redacted under 5 U.S.C. §§ 522(b)(2) and (b)(7)(C) of the FOIA. Thus the court will grant Customs' motion for summary judgment. With regard to the documents redacted or withheld by DEA, the court finds that the information exempted under exemptions 5 U.S.C. §§ 552(b)(2), (b)(3), and (b)(7)(F) of the FOIA, and exemption 5 U.S.C. § 552a(j)(2) of the Privacy Act were properly withheld. However, because the court finds that the DEA has not adequately explained the reasons for redacting or withholding some materials under exemption 5 U.S.C. § 552(b)(7)(C), the court will deny in part and grant in part the DEA's motion for summary judgment regarding those documents.[1] The DEA is ordered to provide a supplemental affidavit and revised *Vaughn* index explaining the decision to redact or withhold certain documents under exemption (b)(7)(C) described as "investigative details" in the DEA's index. The court will also deny plaintiff's cross-motion for summary judgment.

## I. Background

### A. The Demand for Customs Documents

On May 31, 1999, Dr. Amro made a written request to Customs for documents pursuant to FOIA and/or the Privacy Act, including his "personnel file, phone records, computer records, notes, ect."[2] *See* Defendants' Motion for Summary Judgment ("Df's Motion"), doc. no. 16, Exhibit C. On July 8, 1999, Customs responded to Dr. Amro's request with a letter accompanied by a one-page computer print-out, redacted in part, explaining that the redactions were exempted from disclosure pur-

---

1. For purposes of this discussion, the court will refer to these as exemptions (b)(2), (b)(3), (b)(7)(C), (b)(7)(D), (b)(7)(F), and (j)(2).

2. Dr. Amro made such a request after Customs responded to a letter by him in which he asked for an explanation for why he had been stopped by Customs when he reentered the

United States on four occasions over the past two years. Customs, in its response, indicated that it had reviewed its records "and have taken actions so that you will no longer encounter any special attention, beyond normal probabilities, upon future returns to the United States." *See* Df's Motion, Exhibit B.

suant to two exemptions of FOIA. In the same letter, Customs notified plaintiff of his right to appeal the redactions to the FOIA Appeals Officer. In a follow-up letter dated August 4, 1999, Customs notified Dr. Amro that it was unable to locate any other documents responsive to his request. By letters dated July 12th and August 4th, 1999, Dr. Amro appealed the decision of Customs to the FOIA Appeals Officer. On September 29, 1999, the FOIA Appeals Officer upheld Customs' redactions. Having received a final determination from Customs, Dr. Amro filed the instant action in this court pursuant to 5 U.S.C. § 522(a)(4)(B), naming Customs as a defendant.

### B. The Demand for DEA Documents

On May 17, 1999, Dr. Amro requested from DEA his "personnel file[s]" allegedly located at DEA's offices in Philadelphia, Harrisburg, and Allentown. In addition to his personnel file, he also requested "related matter, phones, notes, and ect." DEA's Supplemental Brief, Exhibit A. On July 14, 1999, the DEA released several pages of documents, but redacted or withheld several others, claiming four exemptions under FOIA and one exemption under the Privacy Act. Dr. Amro appealed the DEA's decision to the Department of Justice, Office of Information and Privacy ("OIP"). By letter dated December 29, 1999, the OIP affirmed the DEA's redacting or withholding of documents. However, the OIP indicated that apparently the DEA had found additional records relating to Dr. Amro. In turn, the DEA released some of these newly-found documents, others were

released with redactions, and some were withheld in their entirety. On February 16, 2000, the court granted Dr. Amro leave to amend his FOIA and Privacy Act complaint to include the DEA in his cause of action. On March 10, 2000, Dr. Amro filed an amended complaint joining the DEA as a defendant in this action and requesting disclosure of all redacted and withheld documents.

### C. The Agencies' Contentions

In response to Dr. Amro's amended complaint, Customs and the DEA filed motions to dismiss or, in the alternative, for summary judgment (doc. no. 16). Customs claims that the redactions were properly exempt from disclosure under the applicable statutory exceptions, that the redactions were described with reasonable specificity, and that it had demonstrated a logical connection between the redactions and the claimed exemption. Specifically, Customs argues that (1) it had provided Dr. Amro with a copy of all non-exempt documents in its possession and control,[3] and (2) the material redacted from the documents were properly exempted under exemptions (b)(2) and (b)(7)(C) because the redacted material involves either "trivial administrative matters of no genuine public interest" or the identities of agency officials.

In turn, DEA argues that plaintiff has not exhausted his administrative remedies nor has he described the requested documents with sufficient particularity.[4] In the alternative, the DEA claims that summary judgment is proper as the DEA's

---

3. The Government claims that because no documents relevant to the plaintiff's request were withheld, there is no need for a *Vaughn* index—a supplement which supplies an index of the withheld documents and details the agency's justifications for claiming exemption, may accompany the agency's affidavits. *See Patterson v. F.B.I.*, 893 F.2d 595, 599 & n. 7 (3d Cir.1990); *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C.Cir.1973). Instead, Customs wrote the applicable exemptions right above the redacted portions of the document.

4. A FOIA request must reasonably describe the documents requested. *See* 5 U.S.C. § 552(a)(3). "A description is sufficient if it would enable a professional employee of the agency who was familiar with the subject area of the request to locate the requested record with a reasonable amount of effort." *See Berkery v. United States Dep't of Justice*, No. CIV.A. 92–3728, 1994 WL 444743, at *1 (E.D.Pa. Aug.17, 1994) (citing *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978)).

actions are fully explained with regard to all documents for which exemption from disclosure is claimed. In support of the motion, the DEA attached an affidavit, including a *Vaughn* index. In its affidavit and *Vaughn* index, the DEA asserts that documents were properly redacted or withheld under FOIA exemptions (b)(2), (b)(3), (b)(7)(C), (b)(7)(D), and (b)(7)(F) and Privacy Act exemption (j)(2).

### D. Dr. Amro's Contentions

In his cross motion for summary judgment (doc. no. 18), Dr. Amro challenges the applicability of the exemptions claimed by both Customs and DEA. With regard to Customs, Dr. Amro challenges the agency's assertion of exemption (b)(7)(C), arguing that Customs failed to adequately support the claimed exemption.[5] With regard to the DEA's claim that Dr. Amro has not exhausted his administrative remedies, Dr. Amro points to his having sought review of the DEA's decision before the OIP. In addition, Dr. Amro claims that the DEA had failed to adequately support its (b)(7)(C), (b)(7)(D), and (j)(2) exemptions.[6] Alternately, Dr. Amro asks the court to view the contested DEA materials in camera.

### E. Hearing on Cross–Motions for Summary Judgment

On September 13, 2000, the court held a hearing on the parties' cross-motions for summary judgment. At the conclusion of the hearing, the court granted the DEA leave to submit a supplemental brief in support of its motion. On October 27, 2000, the DEA submitted further explanations for its redacting or withholding of documents under exemptions of the FOIA and the Privacy Act. Furthermore, in its supplemental brief, the DEA acknowl-

edged that, since the time of the hearing, it had located several hundred more pages of documents referred to the DEA by the Executive Office for United States Attorneys ("EOUSA"). Dr. Amro had requested those documents from EOUSA at approximately the same time that he requested documents from Customs and DEA. After DEA reviewed the documents referred by EOUSA, DEA released some of these documents to Dr. Amro but redacted or withheld other portions based on FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F) and Privacy Act exemption (j)(2). In support of these claims for exemption, the DEA submitted another affidavit as well as a revised *Vaughn* index concerning both the information previously released and the new information obtained from EOUSA.

### II. Discussion

#### A. Legal Standard for Review

FOIA requires federal agencies to make requested agency records available if the request "reasonably describes such records and ... is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed," unless the records fall within the statute's list of exemptions. *See* 5 U.S.C. § 552(a)(3). "The Act's 'central purpose' is to ensure that Government activities are 'opened to the sharp eye of public scrutiny.'" *United States ex rel. Mistick PBT v. Housing Auth. Of City of Pittsburgh*, 186 F.3d 376, 383 (3d Cir.1999) (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)).

 Judicial review of an agency's denial of a FOIA request is de novo. *See* 5 U.S.C. § 552(a)(4)(B); *Lame v. United*

---

**5.** Customs also asserted an exemption under (b)(2) but the plaintiff states that he "does not seek to challenge Customs' (b)(2) exemption claim, primarily because there is insufficient information to challenge it." Plaintiff's Mem. of Law at 9.

**6.** DEA also asserted exemptions under (b)(2), (b)(3), and (b)(7)(F) but the plaintiff states that he "does not challenge the disclosure of records [under these exemptions], mainly because he has insufficient information to do so." Plaintiff's Motion for Summary Judgment at 13.

**782**

*States Dep't. of Justice,* 654 F.2d 917, 921 (3d Cir.1981). Any reasonably segregable and non-exempt portion of a record must be disclosed. 5 U.S.C. § 552(b). The nine statutory disclosure exemptions are to be narrowly construed, and the burden is on the agency to sustain its action. *See* 5 U.S.C. § 552(a)(4)(B); *Sheet Metal Workers Int'l Assoc. v. United States Dep't of Veterans Affairs,* 135 F.3d 891, 897 (3d Cir.1998). In this case, Customs has asserted FOIA exemptions (b)(2) and (b)(7)(C), and the DEA has asserted FOIA exemptions (b)(2), (b)(3), (b)(7)(C), and (b)(7)(F).[7] The DEA has also asserted Privacy Act exemption (j)(2).[8]

■ In a FOIA action, summary judgment is proper when the Government's affidavits " 'describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.' " *American Friends Serv. Comm. v. Dep't of Defense,* 831 F.2d

441, 444 (3d Cir.1987) (quoting and adopting standard from *Abbotts v. Nuclear Regulatory Comm'n,* 766 F.2d 604, 606 (D.C.Cir.1985) (citations omitted)).

Affidavits are the means through which a governmental agency details the search it conducted for the documents requested and justifies nondisclosure of the requested documents under each exemption upon which it relied. *Lame,* 654 F.2d at 921. The affidavits must be detailed, nonconclusory, and submitted in good faith. *Weisberg v. United States Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983). " 'Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding documents should not be questioned.' " *Manna v. United States Dep't of Justice,* 815 F.Supp. 798, 817 (D.N.J.1993) (quoting *Matter of Wade,* 969 F.2d 241, 246 (7th Cir.1992)).

**B. Customs' Assertion of Exemptions (b)(2) and (b)(7)(C)**

**1. Customs' Affidavits**

Customs has submitted one affidavit from Leslie Anderson, Acting Director,

---

**7.** The relevant sections of FOIA are as follows:

(b) This section does not apply to matters that are—

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information

(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,

(F) could reasonably be expected to endanger the life or physical safety of any individual

5 U.S.C. §§ 552(b).

**8.** Privacy Act exemption (j)(2) permits an agency head to promulgate rules that allows the agency to withhold information if that agency "performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals...." 5 U.S.C. § 552a(j)(2).

Freedom of Information and Privacy Act Groups, Administration, Planning and Policy, Office of Investigations of the United States Customs Service and two affidavits from Gloria Marshall, Director, Freedom of Information and Privacy Act Groups, Administration, Planning and Policy, Office of Investigations of the United States Customs Service. These affiants were responsible for the overall supervision and management of the Office of Investigations of the United States Customs Service during the time Dr. Amro made his request for information. According to the affidavits, Customs searched the Treasury Enforcement Communications Systems ("TECS")[9] records for information pertaining to Dr. Amro. The affidavits state that Customs had taken action so that, in the future, Dr. Amro no longer would receive "special attention" by the agency.[10] The affidavit also explained that Customs released to Dr Amro his TECS record, with redactions claimed under exemptions (b)(2) and (b)(7)(C).

### 2. Exemption (b)(2)

■ Exemption (b)(2) precludes disclosure of internal personnel rules and practices of an agency and applies to "routine matters" of "merely internal significance." 5 U.S.C. § 552(b)(2). The courts have determined that this exemption is proper when claimed for "administrative markings such as file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references." *Scherer v. Kelley*, 584 F.2d 170, 175–76 (7th Cir.1978). As stated in *Maroscia v. Levi*, 569 F.2d 1000 (7th Cir. 1977), "these are matters in which the public interest is minimal and which fall

within the ambit of Exemption [ (b)(2) ]." *Id.* at 1002.

■ Customs raises this exception to bar disclosure of all internal Customs' codes and file markings. Customs claims that case and file numbers, as well as other administrative numbers, known as "low 2" information, which were redacted, are "used solely for the purpose of indexing, storing, locating, retrieving and distributing information in the investigative files of law enforcement agencies." *See* Df's Motion, Exhibit L, Affidavit of Gloria Marshall ("Marshall I"), ¶ 7. Under this exemption, Customs also "redacted information such as record keeping directions, instructions on contacting agency officials for assistance and guidelines on agency-decision making." Df's Motion at 8. The court finds that Customs' affidavits supporting this exemption show no evidence of bad faith. Furthermore, the court finds that those affidavits, which are detailed and nonconclusory, demonstrate that the redacted codes and file markers are "related solely to the internal personnel rules and practices of [Customs]." 5 U.S.C. § 522(b)(2). Consequently, this information was properly withheld under exemption (b)(2).

### 3. Exemption (b)(7)(C)

■ Exemption (b)(7)(C) precludes disclosure of all "records or information compiled for law enforcement purposes," the dissemination of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 751, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Once the

---

**9.** TECS is a computer database providing controlled access to a database of suspect information and nonsuspect information (such as pilots and passengers). The information in the database is used to support law enforcement by sharing data of common interest. Customs inspectors can use TECS to query passengers when they come into the U.S.

**10.** It appears that the "special attention" referred to by Customs, describes Dr. Amro being the subject of allegedly prolonged and intrusive searches at the border whenever Dr. Amro returned to the United States after traveling abroad.

court identifies the privacy interests affected by disclosure, it must evaluate the public interests served by release, and then balance the two sets of interest. *Manna v. United States Dep't of Justice*, 51 F.3d 1158, 1165 (3d Cir.1995). Exemption (b)(7)(C) "does not prohibit all disclosures which invade personal privacy, but only disclosures which entail an unwarranted invasion of personal privacy." *Lame*, 654 F.2d at 922.

 In balancing the privacy and public interests at stake, the courts have recognized that certain individuals have a clear privacy interest that deserves consideration under (b)(7)(C). These individuals include those "involved in a criminal investigation-including suspects, witnesses, interviewees, and investigators." *Landano v. United States Dep't of Justice*, 956 F.2d 422, 426 (3d Cir.1992), vacated on other grounds by *United States Dep't of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). Reasons for nondisclosure include the potential embarrassment and harassment to which suspects, witnesses, and federal enforcement personnel may become subjected if their identities are released. *See, e.g., Halloran v. Veterans Admin.*, 874 F.2d 315, 321 (5th Cir.1989). Because material released to one person must be released to all, the indirect effects of releasing names and addresses through FOIA weigh in favor of privacy. *Center for Auto Safety v. National Highway Traffic Safety Admin.*, 809 F.Supp. 148, 149 (D.D.C.1993). Against these privacy interests, the court, in evaluating a(b)(7)(C) exemption must consider the public interest in having the citizenry informed about " 'what their government is up to.' " *Landano*, 956 F.2d at 428 (quoting *Reporters Comm.*, 489 U.S. at 773, 109 S.Ct. 1468). However, the *Landano* court cautioned that requests cloaked in the public interest which actually seek personal information accumulated from government investigations pose the danger of an unwarranted invasion of privacy. *Id.* at 428-31.

 Pursuant to exemption (b)(7)(C), Customs withheld the name of a clerical worker who retrieved the record from the TECS database, the names of Custom Inspectors, officers of other federal agencies, local law enforcement officers and the names of third parties of investigatory interest to Customs, as well as the name of the holder of the TECS record, later revealed as the DEA. Df's Motion, Exhibit M, Supplemental Affidavit of Gloria Marshall ("Marshall II"), ¶ 7–8. Customs claims that disclosure of this information would pose "an unwarranted invasion of personal privacy." *Id.* ¶ 7. Customs asserts that the public interest in such information is far outweighed by its potential to subject agency employees and other law enforcement personnel to harassment and unwarranted aggravation. Df's Motion at 10. The court finds that the privacy interest of these individuals outweighs any public interest in disclosing their identities. *Landano*, 956 F.2d at 426. Furthermore, the court finds that Dr. Amro's request for such information on the grounds of public interest is actually an attempt to acquire personal information that will undermine the privacy interests of these individuals. *See Landano*, 956 F.2d at 428–31. Consequently, the court finds that exemption (b)(7)(2) protects these redactions from disclosure.

### C. DEA' Assertion of FOIA Exemptions (b)(2), (b)(3), (b)(7)(C), and (b)(7)(F)

#### 1. DEA's Affidavits

The DEA has submitted the affidavit from Leilia I. Wassom ("Wassom I"), a Drug Enforcement Administration (DEA) Paralegal Specialist assigned to the Freedom of Information Section, DEA headquarters, Washington, D.C. The affidavit explains that the DEA, on July 14, 1999, released 61 pages of documents and withheld 17 pages under exemptions (b)(2), (b)(3), (b)(7)(C), (b)(7)(D), and (b)(7)(F) of FOIA and exemption (j)(2) of the Privacy

Act. Wassom I further explains that Dr. Amro appealed the DEA's decision to the Department of Justice, Office of Information and Privacy ("OIP"). By letter dated December 29, 1999, the OIP affirmed the DEA's decision to claim the asserted exemptions. However, the OIP indicated that, during its review of Dr. Amro's appeal, additional records relating to Dr. Amro had been located by the DEA. Of the additional thirty-two pages found by the DEA, fourteen pages were released to Dr. Amro in their entirety, seven pages were released with redactions, and eleven pages were withheld. Wassom I also explains the DEA's decision to withhold or redact these documents pursuant to FOIA exemptions (b)(2), (b)(3), (b)(7)(C), (b)(7)(D), and (b)(7)(F), as well as Privacy Act exemption (j)(2). Wassom I at 6–13. Along with Wassom I, the DEA submitted a *Vaughn* index which specifically cites which information on which of the 111 total pages of documents at issue were redacted or withheld based on what particular exemption.

In the supplemental brief filed in support of the summary judgment motion, the DEA provided the second affidavit of Ms. Wassom ("Wassom II"), which sets forth the reasons for the DEA's assertion of Privacy Act exemption (j)(2). Wassom II withdraws the DEA's assertion of FOIA exemption (b)(7)(D) and, instead, invokes exemption (b)(7)(C). Wassom II at ¶ 2. The DEA also included in its submission, a revised *Vaughn* index which corrects those pages affected by the assertion of exemption (b)(7)(C). Furthermore, the DEA acknowledged that since the time of the hearing on summary judgment, it has processed an additional 407 pages of material referred to the agency from the EOUSA.

Dr. Amro had requested such information from EOUSA at the time he sought information from Customs and the DEA. Of the 407 pages, 239 were found to be duplicates and the remaining 168 pages were processed by the DEA. After DEA reviewed these 168 pages, the agency released to Dr. Amro five pages in their entirety and ten pages with redactions. The remaining 153 pages were entirely withheld from Dr. Amro. The DEA redacted or withheld information from Dr. Amro pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F) and Privacy Act exemption (j)(2). With respect to these additional 168 pages, the DEA submitted another affidavit as well as a *Vaughn* index.

### 2. Exhaustion Requirement

The DEA has asserted that Dr. Amro has not exhausted his administrative remedies with regard to his request for documents, and, therefore, is barred from pursuing his FOIA claim at this time. Under FOIA, "[e]xhaustion of administrative remedies is generally required before filing suit in federal court...." *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 61 (D.C.Cir.1990) (citing *McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969)). FOIA specifically provides that the agency must decide any appeal to a refusal to release documents within twenty business days from the date the appeal was filed. *See* 5 U.S.C. § 552(a)(6)(A)(ii).[11] "Under FOIA's statutory scheme, when an agency fails to comply in a timely fashion to a proper FOIA request, it may not insist on the exhaustion of administrative remedies ..., unless the agency responds to the request before the suit is filed." *Pollack v. Dep't*

---

**11.** This section of FOIA states in relevant part:

(6)(A) Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—

(ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public hol-

idays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

*See* 5 U.S.C. § 552(a)(6)(A)(ii).

*of Justice,* 49 F.3d 115, 118 (4th Cir.1995) (citing *Oglesby,* 920 F.2d at 62).

### (a) The DEA's Newly–Discovered Documents

In this case, Dr. Amro received a final determination from OIP regarding his request for information from the DEA on December 29, 1999. In its denial of Dr. Amro's appeal, the OIP indicated that it would forward additional documents discovered during the course of OIP's own investigation of the matter. These additional documents were not sent to Dr. Amro until April 3, 2000, over three months after he was informed of their existence by OIP and over eight months after he made his initial request to DEA for such documents. By the time the newly-discovered documents were sent by DEA, Dr. Amro had already filed his amended complaint in federal court, naming the DEA as a defendant. Because these newly-discovered documents were neither received in a timely fashion, nor sent to Dr. Amro before he filed his FOIA action, the court determines that Dr. Amro exhausted his administrative remedies with regard to his request to DEA. Therefore, the court will consider the merits of the parties' motion for summary judgment.

### (b) EOUSA's Late Production of Documents

 Wassom II, attached to the DEA's supplemental brief to its summary judgement, describes the 407 pages of documents requested by Dr. Amro from the EOUSA. In addition, the DEA submitted a *Vaughn* index for those pages. Although the DEA suggests that the court can now consider these documents in its review of the defendants' motion for summary judgment, the court finds that the documents are not part of Dr. Amro's initial request to the DEA and, accordingly, that Dr. Amro still has a right to appeal the DEA's decision to redact and withhold the EOUSA documents. There are at least two reasons for the court's conclusion. First, both Dr. Amro and the EOUSA treated the request to EOUSA for documents separately from the request to DEA. Dr. Amro' request to EOUSA was made in a separate letter sent directly to the EOUSA. The EOUSA gave the request a separate file number. The request to EOUSA was only processed by DEA because the EOUSA referred the request to the DEA.[12] Second, as noted in the DEA's own letter explaining its reasoning for withholding these documents, Dr. Amro had a right to appeal the DEA's refusal to release these documents. Consequently, the court finds that review of the documents found in EOUSA files is precluded by the exhaustion requirement, as Dr. Amro must first seek an appeal from the refusal to release a portion of these materials. *See Oglesby,* 920 F.2d at 61–62 (noting that courts generally require the exhaustion requirement be met in FOIA claims) (citations omitted).

### 3. Exemption (b)(2)

 On nine pages of the 111 pages at issue, the DEA redacted special computer codes used by DEA for identifying compiled information.[13] Specifically, the DEA redacted certain codes known as G–DEP codes and NADDIS numbers. As explained in Wassom I, "G–DEP (Geographical Drug Enforcement Program) codes are assigned to all DEA cases and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity." Wassom I at 6. NADDIS (Narcotic

---

12. As noted by the DEA's supplemental brief in support of its motion for summary judgment, "[t]hese documents were collected by EOUSA in response to a FOIA request to EOUSA from Dr. Amro". *See* Supplemental Brief at 2.

13. The DEA redacted these codes on pages 1, 2, 28, 30, 31, 45, 65, 70, and 78. *See* Wassom Declaration, *Vaughn* index.

and Dangerous Drug Information System) numbers "are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA." *Id.* at 7. Each violator in the NADDIS system is assigned a unique number.

As stated above, exemption (b)(2) is permitted for matters "related solely to the internal personnel rules and practices of an agency," *see* 5 U.S.C. § 552(b)(2), and includes "administrative markings" such as file numbers and data processing information, *see Scherer,* 584 F.2d at 175–76. At least one court in the Third Circuit has determined that the DEA's G–DEP codes and NADDIS numbers met the requirements of exemption (b)(2). *See Manna v. United States Dep't of Justice,* 832 F.Supp. 866, 880 (D.N.J.1993) (noting that G–DEP codes and NADDIS numbers are "matters related to internal agency practice 'in which the public has no substantial interest,' and which 'bear no relation to the substantive content of the records' ") (citing *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 485 (D.C.Cir.1980)). Consequently, this court finds that the DEA's redaction of the G–DEP codes and NADDIS numbers were properly withheld pursuant to exemption (b)(2).

4. Exemption (b)(3)

The DEA has asserted exemption (b)(3) for redacting information from Dr. Amro on one page of the 111 pages in question. According to Wassom I, "[p]age 86 contains information from records obtained from a grand jury subpoena." Wassom I at 7. FOIA exemption (b)(3) provides "that an agency may withhold information if that information is specifically exempted from disclosure by statute...." 5 U.S.C. § 552(b)(3). Several

courts in the Third Circuit have found that grand jury materials meet the requirements of exemption (b)(3) because Federal Rule of Civil Procedure 6(e), regarding the secrecy of grand jury proceedings, is a statute that specifically exempts grand jury material from public disclosure. *See Manchester v. Drug Enforcement Admin.,* 823 F.Supp. 1259, 1267–68 (E.D.Pa.1993); *Manna,* 815 F.Supp. at 812–813; *Holland v. United States Dep't of Justice,* Civ. A. No. 85–1140, 1986 WL 3122 *2 (E.D.Pa. March 11, 1986); *Ferri v. United States Dep't of Justice,* 573 F.Supp. 852, 857 (W.D.Pa.1983). Consequently, this court finds that the DEA properly redacted this information under exemption (b)(3).

5. Exemption (b)(7)(C)

Pursuant to exemption (b)(7)(C), the DEA withheld from Dr. Amro the following information: (1) the names of support personnel of the DEA;[14] (2) the names of law enforcement personnel, including the names of special agents;[15] (3) the names of suspects and investigatory details concerning those suspects;[16] (4) the names of non-suspects arising during investigations by the DEA;[17] and (5) the names of third-party individuals.[18] With regard to the names of DEA personnel as well as law enforcement officers, the public interest in disclosing the identities of these individuals is outweighed by the privacy interests of those individuals. *See Landano,* 956 F.2d at 426. Similarly, the public interest in the names of suspects with whom the DEA spoke is also outweighed by the privacy interests of those individuals. *See id.* As stated in Wassom I, revealing this information "would place each of these persons in such a position that they may suffer undue invasions of priva-

---

**14.** *See Vaughn* index at 2–14, 18, 20–23, 26–42, 44–51, 53, 56–60, 64–71, 73, 76–78, 80, 87, 89, 91, 93, 104, 105, 106, 110.

**15.** *See id.* at 3, 6, 15–23, 25–26, 30–31, 33, 35, 37, 38, 39, 40, 42, 44, 48–49, 51–52, 56–60, 63, 65–67, 72–74, 76–77, 82–86, 88–89, 91, 93, 110.

**16.** *See id.* at 15–23, 26–27, 29, 51–56, 72, 74–75, 77, 81–92.

**17.** *See id.* at 27, 29.

**18.** *See id.* at 19, 20, 24–25, 27, 33, 44, 51, 59–63, 66–67, 69, 77–79.

cy, harassment and humiliation from disclosure of their identities in a criminal law enforcement investigatory file." Wassom I at 8. Finally, public interest in the names of non-suspects arising during DEA investigations and the names of third-parties are similarly outweighed by the privacy interest of these individuals. *See Landano*, 956 F.2d at 426 (stating "disclosure of the names of interviewees and witnesses may result in embarrassment and harassment to them"). In its supplemental brief, the DEA notes that these individuals "disclosed information regarding narcotics abuse or addictions, and other medical information of a highly personal and sensitive nature...." DEA's Supplemental Brief at 3. Consequently, revealing their identities in this case would lead to embarrassment and humiliation and is therefore not outweighed by any public interest in having their names disclosed.

▮ According to the DEA's *Vaughn* index, the agency has withheld not only suspects' names, but also "investigatory details" regarding these suspects. The DEA, however, has provided surprisingly little explanation of what this information contains. Wassom I claims that DEA withheld *"other identifying information* which would reveal the identity of and disclose personal information about individuals who were involved with the plaintiff." Wassom I at 8 (emphasis added).[19] However, Wassom II states that withholding some of the DEA's investigative details is justified because the information would "reveal medical treatment or information related to drug addiction...." Wassom II at 4. Neither the *Vaughn* index nor Wassom I or II, however, specifically explains the DEA's withholding of information it describes as "investigative

details" listed in the index. Consequently, this court cannot adequately perform the balancing function necessary under exemption (b)(7)(C). *See Mays v. Drug Enforcement Administration*, 234 F.3d 1324, 1330–31 (D.C.Cir.2000) (noting that *Vaughn* index references to "investigative details" without any explanation about the information in question fails to inform the court whether privacy interests are implicated). Furthermore, the information withheld as "investigatory details" occurs on several different documents which make application of the balancing test impossible without more specific information. *See Lame*, 654 F.2d at 923 ("[T]he 7(C) balancing test must be conducted with regard to each document, because the privacy interest and the interest of the public in disclosure may vary from document to document."). Therefore, the court will deny defendant DEA's request for summary judgment for that information which the agency withheld as "investigatory details" under exemption (b)(7)(C).[20]

### 6. Exemption (b)(7)(F)

▮ Under exemption (b)(7)(F), an agency may redact or withhold records assembled for the purposes of law enforcement if disclosure of such records "could reasonably be expected to endanger the life or physical safety of any individual." *See* 5 U.S.C. § 552(b)(7)(F). Based on this exemption, the DEA has sought to prevent disclosure of the names and identities of DEA Supervisory Special Agents and other law enforcement officers.[21] In support of redacting or withholding documents under exemption (b)(7)(F), DEA argues that "[i]t has been the experience of [the agency] that the release of Special Agents'

---

**19.** DEA Affidavit at 8 (emphasis added). Because the DEA's affidavit specifically notes that it withheld names and addresses, "other identifying information" is something other than that type of information.

**20.** *See supra* note 16 for a list of pages, as set out in the Vaughn index, that refers to "investigatory details."

**21.** According to the DEA's *Vaughn* index, the agency has asserted the exemption on the following pages: 3, 6, 15–23, 25–26, 30–31, 33, 35, 37–40, 42, 44, 48–49, 51–52, 56–60, 63, 65–67, 72–74, 76–77, 82–86, 88–89, 91, 93, 105, 110. *See Vaughn* index.

identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents." *See* Wassom I at 3. The agency, therefore, asserts that releasing this information in this case poses similar hazards. In assessing the validity of an agency's assertion of exemption (b)(7)(F), the district court "will, within limits, defer to the agency's assessment of danger." *Gardels v. CIA,* 689 F.2d 1100, 1104–1105 (D.C.Cir.1982). In this case, the court finds that the DEA has adequately supported its case for withholding the names of special agents and other law enforcement officers pursuant to exemption (b)(7)(F). *See Manchester,* 823 F.Supp. at 1273 (upholding DEA's claim that the agency's past experience in disclosing law enforcement officers' identities supports invoking exemption (b)(7)(F)).

### D. DEA's Assertion of Privacy Act Exemption (j)(2)

The DEA argues that, under exemption (j)(2) of the Privacy Act, the DEA meets that exemption's requirements for withholding records from Dr. Amro. Although the purpose of the Privacy Act is "to permit access by individual citizens to certain government records pertaining to those persons so as to ensure the accuracy of such records," *Nunez v. Drug Enforcement Administration,* 497 F.Supp. 209, 211 (S.D.N.Y.1980), the statute allows a head of an agency to promulgate rules excluding its agency records if that "agency or component thereof ... performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals...." 5 U.S.C. § 552a(j)(2). The DEA has promulgated such regulations through 28 C.F.R. § 16.98. The regulations specifically exempt the DEA's Investigative Reporting and Filing System records. 28 C.F.R. § 16.98(c)(2). Because the DEA is principally involved in criminal law enforcement and because the DEA has passed regulations exempting its records

from disclosure to the public, the court finds that the DEA properly refused to process Dr. Amro's request for documents under the Privacy Act. *See Tamayo v. United States Dep't of Justice,* 932 F.Supp. 342, 344 (D.D.C.1996) (stating that DEA records have been exempted from disclosure under the Privacy Act); *Augarten v. Drug Enforcement Administration,* Civ. A. No. 93–2192, 1995 WL 350797 *3 (D.D.C. May 22, 1995) (concluding that DEA's records are exempt from disclosure under the Privacy Act). Therefore, this court grants the DEA's motion for summary judgment with regard to exemption (j)(2) of the Privacy Act.

### E. Plaintiff's Request for In Camera Review

In his cross-motion for summary judgment, Dr. Amro requests that this court consider in camera review of the documents withheld by the DEA. In considering whether in camera review is required, the District of Columbia Circuit has determined that "a district court need not conduct its own in camera search for segregable non-exempt information unless the agency response is vague, its claims too sweeping, or there is reason to suspect bad faith." *Mead Data Central, Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 262 (D.C.Cir.1977). The decision to conduct an in camera review is within the broad discretion of the court. *Lam Lek Chong v. Drug Enforcement Admin.,* 929 F.2d 729, 735 (D.C.Cir.1991).

In this case, Dr. Amro has not demonstrated that the DEA has acted in bad faith in processing his request for documentation. While the agency failed to provide all the requested materials in a timely fashion, it did respond to Dr. Amro's request with a substantial production of documents. There is no evidence that the untimeliness of some of the DEA's production of documents was an effort to frustrate the requirements of FOIA. Furthermore, although this court has found

that the DEA's justification for exempting a small portion of the material withheld under exemption (b)(7)(C) was vague, the proper remedy is to allow the agency to submit a revised supplemental affidavit and *Vaughn* index regarding these particular materials. *See Manchester*, 823 F.Supp. at 1265, 1273 (finding DEA improperly invoked three exemptions but allowed the agency to submit supplemental affidavit). Therefore, the court denies the plaintiff's request for in camera review of those documents withheld pursuant to exemption (b)(7)(C).

## III. Conclusion

For reasons stated in the foregoing opinion, Customs' motion for summary judgment for documents withheld under exemption (b)(2) and (b)(7)(C) is granted and Dr. Amro's cross-motion for summary judgment is denied. Furthermore, the DEA's motion for summary judgment is granted for materials withheld under exemptions (b)(2), (b)(3), and (b)(7)(F) of the FOIA and exemption (j)(2) of the Privacy Act. However, the DEA's motion for summary judgment for documents withheld under exemption (b)(7)(C) is granted in part and denied in part. The DEA is granted leave for thirty days from the date of the attached Order to submit a supplemental affidavit and revised *Vaughn* index describing its justification for exemption (b)(7)(C) for all information described as "investigatory details" in its *Vaughn* index. The DEA's motion for summary judgment for all other materials withheld under exemption (b)(7)(C) is granted. Dr. Amro's cross-motion for summary judgment is denied.

An appropriate order follows.

### *ORDER*

**AND NOW,** this **30th** day of **January, 2001,** upon consideration of plaintiff and defendants cross-motions for summary judgment, it is hereby **ORDERED** that:

1. Defendant Customs' motion for summary judgment (doc. no. 16) is **GRANTED;**

2. Defendant DEA's motion for summary judgment (doc. no. 16) with regard to exemptions (b)(2), (b)(3), and (b)(7)(F) of the FOIA and exemption (j)(2) of the Privacy Act is **GRANTED.**

3. Defendant DEA's motion for summary judgment with regard to exemption (b)(7)(C) is **GRANTED IN PART** and **DENIED IN PART.** The DEA is **GRANTED LEAVE** for thirty days from the date of this Order to submit a supplemental affidavit and revised *Vaughn* index describing its justification for exemption (b)(7)(C) for all information described as "investigatory details" in its *Vaughn* index submitted with its motion for summary judgment and supplemental brief. The DEA's motion for summary judgment for all other materials withheld under exemption (b)(7)(C) is **GRANTED.**

4. Plaintiff's motion for summary judgment (doc. no. 18) is **DENIED.**

5. Plaintiff's motion for in camera inspection (doc. no. 18) of the withheld or redacted documents is **DENIED.**

**AND IT IS SO ORDERED.**